# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

### FG HEMISPHERE ASSOCIATES, LLC,
Petitioner-Appellee,

v.

### DEMOCRATIC REPUBLIC OF CONGO,
Respondent-Appellant,

### SOCIETE NATIONALE D'ELECTRICITE,
Respondent-Appellee.

———————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————

## BRIEF OF THE UNITED STATES AS *AMICUS CURIAE*
## IN SUPPORT OF APPELLANT

———————————

HAROLD HONGJU KOH
 Legal Adviser
Department of State
Washington, DC  20520

TONY WEST
 Assistant Attorney General
RONALD C. MACHEN JR.
 United States Attorney

DOUGLAS N. LETTER
 (202) 514-3602
SHARON SWINGLE
 (202) 353-2689
 Attorneys, Appellate Staff
 Civil Division, Room 7250
 Department of Justice
 950 Pennsylvania Ave., N.W.
 Washington, D.C.  20530-0001

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(1), amicus curiae the United States respectfully submit this certificate as to parties, rulings and related cases:

**(A) Parties:**

Petitioner in the district court, which is appellee in this Court, is FG Hemisphere Associates, LLC.  The original petitioner in this litigation was Energoinvest DD, which is FG Hemisphere's successor-in-interest and was terminated from the litigation in 2005.

Respondents in the district court were the Democratic Republic of Congo (DRC), which is the appellant in this Court, and Societe Nationale D'Electricite, which is an appellee in this Court.

The United States is participating as amicus curiae.

In addition to the parties in the litigation, two individuals, Oscar Tatanene Manata and Elinga Simoke Atembina, were movants in the district court.  They are not parties to this appeal.

**(B) Ruling Under Review**

The rulings under review are Judge Richard R. Leon's March 19, 2009, Order holding the DRC in contempt, ordering the DRC to provide certain discovery regarding its assets, and ordering the DRC to show cause why monetary

contempt sanctions should not be imposed; and Judge Leon's March 4, 2010, minute order imposing monetary contempt sanctions as proposed in the earlier order.

**(C) Related Cases**

This litigation gave rise to a previous appeal before this Court, *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 447 F.3d 835 (D.C. Cir. 2006), which involved the propriety of the district court's entry of default judgment against the DRC and its denial of a motion of relief from that judgment.   I am not aware of any other related cases within the meaning of D.C. Circuit Rule 28(1).


/s/ Sharon Swingle
Sharon Swingle
Counsel for the United States

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF INTEREST . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

THE DISTRICT COURT ERRED IN IMPOSING MONETARY
CONTEMPT SANCTIONS AGAINST THE DRC. . . . . . . . . . . . . . . . . . . 7

A.     The FSIA Precludes Enforcement Of Monetary
Contempt Sanctions Against A Foreign State. . . . . . . . . . . . . . . . . 7

B.     Monetary Contempt Sanctions Are Inconsistent With
Equitable Principles And International Practice, And
Could Have Significant Adverse Foreign Policy
Consequences. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.     Equitable Principles Weigh Decisively Against An Order
Imposing Monetary Contempt Sanctions On The DRC
For Its Failure To Comply With The District Court's
Discovery Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2.     International Practice Also Weighs Against An Order
Of Monetary Contempt Sanctions Against A Foreign
State. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

3.     The Domestic Treatment Of The United States
Government Provides Analogous Support For The
View That Monetary Contempt Sanctions Should
Not Be Ordered. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

4.      The Nature Of The Overbroad Discovery And
Execution Orders In This Case Also Weigh
Against Monetary Contempt Sanctions. . . . . . . . . . . . . . . . . . 26

CONCLUSION .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF
    APPELLATE PROCEDURE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page:**

**Cases:**

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080
    (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

\* *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417
    (5th Cir. 2006), *cert. dismissed*, 549 U.S. 1275 (2007). . . . . . . . . . . 8, 14, 20

*Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*,
    179 F.3d 1279 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428, 109 S. Ct. 683 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

\* *Autotech Technologies LP v. Integral Research &*
    *Dev. Corp.*, 499 F.3d 737 (7th Cir. 2007),
    *cert. denied*, 552 U.S. 1231 (2008). . . . . . . . . . . . . . . . . . . . . . . . . 19, 27, 28

*Coleman v. Espy*, 986 F.2d 1184 (8th Cir.), *cert. denied*,
    510 U.S. 913 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

\* *Connecticut Bank of Commerce v. Republic of Congo*,
    309 F.3d 240 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

*De Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984),
    *cert. denied*, 471 U.S. 1125 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir.),
    *cert. denied*, 522 U.S. 818 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re Estate of Marcos Human Rights Litig.*, 94 F.3d 539
    (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_____
\* Authorities upon which we chiefly rely are marked with asterisks.

v

*FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 447 F.3d 835 (D.C. Cir. 2006)............................... 4

*First City, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir.),
*cert. denied*, 537 U.S. 813 (2002)................................ 19

*Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624 (1988)................. 15

*International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994)................................... 18

*In re Papandreou*, 139 F.3d 247 (D.C. Cir. 1998)..................... 17, 28

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir.), *cert. denied*, 469 U.S. 881 (1984)....................... 12

*Republic of Austria v. Altmann*, 541 U.S. 677, 124 S. Ct. 2240 (2004).................................................. 7

*Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65 (3d Cir. 1994)...................................... 19

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir.), *cert. dismissed*, 506 U.S. 948 (1992)...................... 19

*In re Sealed Case No. 98-3077*, 151 F.3d 1059 (D.C. Cir. 1998)............................................. 25

*Shillitani v. United States*, 384 U.S. 364, 86 S. Ct. 1531 (1966)..................................................... 15

*The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116 (1812)....... 26

*Stephens v. National Distillers & Chem. Corp.*, 69 F.3d 1226 (2d Cir. 1995).............................................. 20

*Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 57 S. Ct. 592 (1937)................................................. 15

*Yancheng Baolong Biochem. Prods. Co. v. United States*,
406 F.3d 1377 (Fed. Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Statutes and Rules:**

Australian Foreign States Immunities Act of 1985, § 34 .. . . . . . . . . . . . . . . . . 24

Canadian State Immunity Act:
§ 10(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
§ 12(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Federal Rule of Civil Procedure 69(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Foreign Sovereign Immunities Act:
28 U.S.C. § 1330. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1602 *et seq*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
28 U.S.C. § 1605. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
28 U.S.C. § 1605(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
28 U.S.C. § 1606. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18
28 U.S.C. § 1609. . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 10, 11, 12, 15, 27, 28, 30
28 U.S.C. §§ 1609-1611. . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 12, 15, 30
28 U.S.C. §§ 1610. . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10, 11, 28, 29
28 U.S.C. §§ 1610(a).. . . . . . . . . . . . . . . . . . . . 6, 7, 8, 10, 12, 16, 27, 28

Pakistan State Immunity Ordinance, § 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Pub. L. No. 94-583, 90 Stat. 2891 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Pub. L. No. 100-669, 102 Stat. 3969 (1988). . . . . . . . . . . . . . . . . . . . . . . . . 12

Singapore State Immunity Act, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United Kingdom State Immunity Act, § 13. . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Legislative Materials:**

*Foreign Sovereign Immunity Act Amendments,*
>   *Hearing on H.R. 3763*, Before the Senate
>   Judiciary Committee, S. Hrg. 100-1061,
>   100th Cong., 2d Sess. (Oct. 5, 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hearing on H.R. 1149, H.R. 1689, and H.R. 1888,*
>   Before the Subcommittee on Administrative Law
>   and Governmental Relations of the House
>   Judiciary Committee, 100th Cong., 1st Sess. (1987). . . . . . . . . . . . . . . 13, 14

*Immunities of Foreign States, Hearing on H.R. 3493*,
>   Before Subcommittee on Claims and Governmental
>   Relations of House Judiciary Committee, 93d Cong.,
>   1st Sess. (June 7, 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 30

*Jurisdiction of United States Courts in Suits Against*
>   *Foreign States*, H.R. Rep. No. 94-1487 (1976),
>   *reprinted in* 1976 U.S.C.C.A.N. 6604. . . . . . . . . . . . . . . . . . . 11, 12, 28, 29

**Miscellaneous:**

J. Dellapenna, *Suing Foreign Governments and Their*
>   *Corporations* (2d ed. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

European Convention on State Immunity, (E.T.S. No. 74), entered
>   into force June 11, 1976. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

European Convention on State Immunity, (E.T.S. No. 74),
>   Explanatory Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

H. Fox, "International Law and the Restraints on the Exercise
>   of Jurisdiction by National Courts of States," in
>   M. Evans, ed., *International Law* (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*International Law Commission:  Jurisdictional Immunities*
  *of States and Their Property, Comments and*
  *Observations Received from Governments*,
  UN Doc. A/CN.4/410 (Feb. 17, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Restatement (Third) of Foreign Relations Law of United States,
  § 442 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United Nations Convention on Jurisdictional Immunities of
  State and Their Properties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Yearbook of the International Law Commission, 1986, Vol. II,
  Park Two, UN Doc. A/41/10, chap. II.D. . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**GLOSSARY**

DRC         Democratic Republic of Congo

FSIA        Foreign Sovereign Immunities Act

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 10-7046

———————————

FG HEMISPHERE ASSOCIATES, LLC,
Appellee,

v.

DEMOCRATIC REPUBLIC OF CONGO,
Appellant,

SOCIETE NATIONALE D'ELECTRICITE,
Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

BRIEF OF THE UNITED STATES AS *AMICUS CURIAE*
IN SUPPORT OF APPELLANT

———————————

## INTRODUCTION AND STATEMENT OF INTEREST

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.*

(FSIA), establishes the comprehensive and exclusive scheme for obtaining and

enforcing judgments against a foreign state in civil cases in U.S. courts. *See*

*generally Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428,

434-435 (1989). The FSIA provides that foreign states are immune from

jurisdiction unless they fall within one of the narrow exceptions to foreign

sovereign immunity. *See* 28 U.S.C. § 1605. The FSIA also establishes a default presumption that foreign state property is immune from attachment, execution, or arrest except in limited circumstances established by statute. *See* 28 U.S.C. §§ 1609-1611.

In this case, despite the lack of any explicit authorization or enforcement mechanism in the FSIA, the district court has imposed monetary contempt sanctions upon a foreign state. The United States has a substantial interest in the proper interpretation and application of the FSIA because of the foreign policy implications of U.S. litigation involving foreign states. Those foreign policy interests are particularly significant where, as here, a U.S. court's orders are inconsistent with international practice, and are likely to be viewed as an affront to the dignity and sovereignty of the foreign state. The United States also has a significant interest in the treatment of foreign states in U.S. courts by virtue of the reciprocal treatment of the United States Government by the courts of other nations. Accordingly, the United States has participated in this litigation to express its position that the district court erred in imposing monetary contempt sanctions upon the Democratic Republic of Congo (DRC).

In stating its views as *amicus curiae*, the United States wishes to make clear that it does not condone a foreign state's failure to comply with a valid order of a

U.S. court that has jurisdiction over the state.[1] Nevertheless, the legal framework established by Congress for litigation against foreign states does not permit the enforcement of monetary contempt sanctions against a state. Imposing such sanctions could adversely affect our nation's foreign relations and open the door to reciprocal sanctions against our Government abroad.

## STATEMENT OF THE ISSUE PRESENTED

Whether the district court erred when it ordered monetary contempt sanctions against the DRC.

## STATEMENT

This litigation arises out of a lawsuit brought by Energoinvest DD, a foreign company, to confirm and enforce an international arbitral award entered in its favor against the DRC and its wholly-owned state company, Societe Nationale D'Electricite (SNDE). Dkt. 1. The district court granted Energoinvest's motion for a default judgment and confirmation of the arbitral award. Dkt. 17. Energoinvest subsequently assigned its interests in the judgment and the underlying debt, arbitration, and arbitral award, to FG Hemisphere Associates, LLC, which was substituted as plaintiff in the action.

---

[1] We take no position in this litigation on the question whether the district court correctly exercised jurisdiction over the plaintiffs' claims under the FSIA. We also take no position on whether the defendants violated a district court order.

3

FG Hemisphere sought execution of the judgment, specifically targeting two properties in Washington, DC, that had previously been used as diplomatic residences by the DRC. *See FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 447 F.3d 835, 837 (D.C. Cir. 2006). The district court ordered "that plaintiff may immediately execute on the judgment * * * against any property, interests, or assets of any kind permitted by the Foreign Sovereign Immunities Act," and further ordered execution against the two properties identified by FG Hemisphere. Dkt. 29, at 1. The district denied the DRC's subsequent motion to reopen the default judgment and to quash the writs of execution, but this Court reversed. *See* 447 F.3d at 837-838. This Court held that "the DRC's neglect was excusable and that the DRC's claim of immunity is potentially meritorious" as to the two properties identified in the district court's execution order. *Id.* at 843.

In the meantime, FG Hemisphere sought discovery from the DRC regarding, *inter alia*, all worldwide assets of the DRC (except for assets located in the territorial jurisdiction of the DRC) with a value greater than $10,000. Dkt. 74-4, at 6-9. The DRC objected to this request to the extent it sought discovery relating to property not subject to execution or attachment under the FSIA, such as property located outside the United States. Dkt. 74-5, at 3-12. In September

2006, the district court rejected these objections and granted the plaintiff's motion

to compel.  Minute Order, Sept. 28, 2006.  The district court ordered the DRC to

search "both inside and outside the United States" for responsive documents,

without limiting the scope of discovery to documents relating to property located

within the United States and subject to execution or immunity under the FSIA.

*Ibid.*

FG Hemisphere subsequently moved for an order holding the DRC in

contempt and imposing monetary contempt sanctions, asserting that the DRC had

violated the district court's discovery order by failing to produce documents

relating to worldwide assets, including assets outside the United States.  Dkt. 102.

FG Hemisphere argued that monetary contempt sanctions, payable to FG

Hemisphere, would help to compensate FG Hemisphere and aid in the

enforcement of the underlying judgment.  Dkt. 102, at 9.  The district court

granted the motion and held the DRC in contempt.  DKT 107.  The district court

ordered the DRC to comply with the discovery orders and to show cause why, if it

failed to do so within 30 days, the DRC should not be subject to a fine of $5,000

per week payable to the plaintiff, with the amount of the fine to double every four

weeks until it reached a maximum of $80,000 per week.  Dkt. 107.  Following

briefing on the show-cause order, the district court imposed monetary contempt

sanctions against the DRC as proposed in its earlier order.  *See* Minute Order,

Mar. 4, 2010.

## SUMMARY OF ARGUMENT

The United States urges this Court to hold that the district court erred in

imposing monetary contempt sanctions against the DRC.  Absent a foreign state's

waiver of immunity from execution, an order of monetary contempt sanctions

against a foreign state is unenforceable under § 1610(a), a conclusion that is

confirmed by the legislative history to the FSIA.  Considerations of foreign state

immunity, and basic equitable principles, weigh decisively against imposing an

unenforceable order of sanctions — particularly given that such an order could

cause significant friction in our foreign relations and adversely affect the treatment

of the United States Government in foreign courts.  Monetary contempt sanctions

are also at odds with international practice and the treatment of our own

Government by courts here and abroad.  Particularly in light of the underlying

execution and discovery orders in this case, which were improperly broad, the

district court erred in ordering monetary contempt sanctions against the DRC.

# ARGUMENT

## THE DISTRICT COURT ERRED IN IMPOSING
## MONETARY CONTEMPT SANCTIONS AGAINST THE DRC

**A.**     **The FSIA Precludes Enforcement Of Monetary Contempt
Sanctions Against A Foreign State.**

1.     As noted above, the FSIA sets out the exclusive means for obtaining

and enforcing a judgment against a foreign state in a civil case in U.S. courts.  *See*

*Amerada Hess*, 488 U.S. at 433; *Republic of Austria v. Altmann*, 541 U.S. 677,

691 (2004).  Under the FSIA, a foreign state is immune from jurisdiction except as

immunity is removed by statute, 28 U.S.C. § 1604, and foreign state property is

immune from attachment, arrest, or execution except as provided in 28 U.S.C.

§§ 1610-1611.  *See* 28 U.S.C. § 1609.  As we next elaborate, those provisions do

not permit enforcement of monetary contempt sanctions.

Section 1609 of the FSIA establishes a default presumption that property of

a foreign state is immune from execution or attachment.  Absent a foreign state's

waiver of immunity from execution of an order imposing monetary sanctions, an

order of money sanctions for failure to comply with court-ordered discovery does

not fall within any statutory exception to immunity from execution.  An order

imposing monetary sanctions for contempt of court does not involve a claim based

upon commercial activity as required by § 1610(a)(2); it does not establish rights

in property as required by § 1610(a)(3) and (a)(4); it does not involve efforts to recover under an insurance policy as required by § 1610(a)(5); it is not based on an order confirming an arbitral award as required by § 1610(a)(6); and it does not involve a claim encompassed within the terrorism exception to immunity from suit as required by § 1610(a)(7). In sum, Congress has not provided any mechanism for a U.S. court to enter an enforceable contempt order imposing sanctions against an unwilling foreign state.

In *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428 (5th Cir. 2006), *cert. dismissed*, 549 U.S. 1275 (2007), the Fifth Circuit considered the propriety of an order of monetary contempt sanctions against a foreign state. The *Af-Cap* Court realized that the FSIA establishes the "sole, comprehensive scheme" for enforcing judgments against foreign states, and that orders imposing monetary sanctions for contempt are not among the circumstances described in § 1610 in which attachment and execution are permitted. *See* 462 F.3d at 428; *see also De Letelier v. Republic of Chile*, 748 F.2d 790, 798-799 (2d Cir. 1984) (FSIA does not permit execution against foreign state's property of judgment resulting from non-commercial tortious conduct), *cert. denied*, 471 U.S. 1125 (1985). Accordingly, and as the Fifth Circuit properly concluded, a district court errs when

it imposes monetary sanctions on a foreign state for its failure to comply with a court order.  *See* 462 F.3d at 428.

In the district court, the plaintiff relied on § 1606's proviso that a foreign state subject to district court jurisdiction "shall be liable in the same manner and to the same extent as a private individual under like circumstances" to argue that the district court may exercise the full range of coercive measures against a foreign state that would be available against a private litigant, including the imposition of monetary contempt sanctions.  However, as the Second Circuit recognized in *De Letelier*, in rejecting a claim that Congress could not have intended in the FSIA "to create a right without a remedy," federal courts' jurisdiction under the FSIA over claims against foreign states does not carry a parallel and corresponding power to enforce a judgment on those claims.  748 F.2d at 792, 798-799. Congress adopted the FSIA against "the background of the views of sovereignty expressed in the 1945 charter of the United Nations and the 1972 enactment of the European Convention" as well as the state of the law in the United States prior to 1976.  *Id.* at 799.  Under both international law and pre-1976 U.S. law, a litigant could obtain a judgment against a foreign state under certain circumstances, but had *no* means of enforcing that judgment against a foreign state's property.  *See id.* In seeking enforcement, a litigant was left to seek diplomatic intercession by the

United States Government or to rely on the willingness of a foreign state to honor judgments against it.

Congress changed that rule "in part" in enacting the FSIA, but it did not provide for plenary enforcement of the orders of U.S. courts, instead choosing to cabin courts' enforcement authority in 28 U.S.C. §§ 1609-1611. *See id.*; *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 252 (5th Cir. 2002) (noting that "immunity from execution is * * * narrower than jurisdictional immunity"). That statutory scheme does not permit enforcement of an order imposing monetary contempt sanctions against a foreign state.

Finally, the fact that a foreign state has waived its sovereign immunity to suit under Section 1605(a)(1) of the FSIA does *not* establish that the state is subject to enforcement of monetary contempt sanctions under Section 1609 and 1610(a). There is a significant and intentional disjunct between the jurisdictional and enforcement provisions of the FSIA, and even where a foreign state has waived its immunity from jurisdiction a court must nevertheless find that it has waived its immunity from execution under § 1610 and that the other prerequisites in § 1610 are satisfied in order for execution to be permissible. *See, e.g., Connecticut Bank*, 309 F.3d at 247, 252-253. As a matter of practice, furthermore, it would be extremely unlikely for a foreign state to waive its immunity from

enforcement of punitive, quasi-criminal sanctions of this type. As discussed below (at pp. 20-24, *infra),* under international practice, a state may not be subject to coercive sanctions for noncompliance with a judicial order. In sum, absent a clear waiver of immunity from execution for an order of monetary contempt sanctions, such an order is unenforceable under the FSIA.

2. The legislative history to the FSIA also supports the conclusion that contempt sanctions may not be enforced against a foreign state that has not waived immunity for such sanctions. As set out in the House Report accompanying the legislation, Congress intended that, for a foreign state subject to jurisdiction,

> liability exists as it would for a private party under like circumstances. * * * Consistent with this section, a court could, when circumstances were clearly appropriate, order an injunction or specific performance. ***But this is not determinative of the power of the court to enforce such an order.*** For example, a foreign diplomat or official could not be imprisoned for contempt because of his government's violation of an injunction. See 22 U.S.C. 252. ***Also a fine for violation of an injunction may be unenforceable if immunity exists under sections 1609-1610.***

*Jurisdiction of United States Courts in Suits Against Foreign States*, H.R. Rep. No. 94-1487, at 22 (1976) (emphasis added), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6621.

Furthermore, Congress recognized in enacting the FSIA that "the enforcement of judgments against foreign state property remains a somewhat

controversial subject in international law," and explained that the statute was intended to end the pre-FSIA practice of attaching foreign state property in order to obtain jurisdiction over the foreign state, which had given rise "to serious friction in United States' foreign relations" and had been criticized as permitting U.S. courts to adjudicate cases "not involving any significant U.S. interest." H.R. Rep. No. 94-1487, at 26-27. In light of these concerns, Congress should not be understood to have intended for the FSIA to permit enforcement of monetary contempt sanctions — quasi-punitive penalties not provided for under international practice. *Cf. Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir.) (declining to adopt construction of FSIA with the "potential for international discord and for foreign government retaliation" in the absence of evidence that Congress intended that result), *cert. denied*, 469 U.S. 881 (1984).

In 1988, Congress amended the FSIA to include an additional exception to immunity from execution for judgments based on an order confirming an arbitral award against a foreign state — the provision invoked in this case as the basis for the district court's jurisdiction over the DRC. *See* Pub. L. No. 100-669, § 3, 102 Stat. 3969, 3969 (1988), codified at 28 U.S.C. § 1610(a)(6). There is no evidence, however, that in adding this provision, Congress intended to alter dramatically the carefully crafted execution scheme set out in §§ 1609-1611. To the contrary,

12

Congress initially considered a bill that would have provided for significantly

broader enforcement rights against foreign state property, but subsequently

enacted a much narrower bill after objections were raised by the Department of

Justice, the Department of State, the Department of Defense, and the Department

of Treasury that expanding litigants' rights of execution against foreign state

property could lead to friction in the United States' foreign affairs, a decline in

foreign investment in the United States, and reciprocal measures against the

extensive U.S. government property holdings abroad. *See Foreign Sovereign*

*Immunity Act Amendments, Hearing on H.R. 3763*, Before the Senate Judiciary

Committee, S. Hrg. 100-1061, 100th Cong., 2d Sess. 17, 39, 47, 52, 105-106, 108

(Oct. 5, 1988).

Significantly, before enacting the 1988 amendments, Congress heard

testimony by a State Department official in the prior session of Congress, in

hearings held before a subcommittee of the House Judiciary Committee, that the

FSIA would not permit "imposition of a fine on a foreign state * * * for a state's

failure to comply with a court order." *Hearing on H.R. 1149, H.R. 1689, and H.R.*

*1888,* Before the Subcommittee on Administrative Law and Governmental

Relations of the House Judiciary Committee, 100th Cong., 1st Sess., at 19 (1987).

Elizabeth Verville, Deputy Legal Adviser in the State Department, explained that,

although the FSIA does not "explicitly preclud[e] a court from imposing a fine on a foreign state * * * [for] failure to comply with a court order," the statute's legislative history makes clear that sanctions of this sort are impermissible. *Id.* at 36. The history of the FSIA thus supports the conclusion that monetary contempt sanctions against a foreign state are unenforceable absent an applicable waiver of immunity from execution, and that Congress had in mind concerns about international practice and reciprocity when it passed the execution provisions of the FSIA.

Finally, this Court should give weight to the views of the Executive Branch in interpreting the FSIA, given the special expertise of the Executive on issues of foreign sovereign immunity; its unique historic role in this area of the law; and the joint role of the Department of Justice and Department of State in drafting the legislation. *See Af-Cap*, 462 F.3d at 428 n.8.

**B.    Monetary Contempt Sanctions Are Inconsistent With Equitable Principles and International Practice, And Could Have Significant Adverse Foreign Policy Consequences.**

Regardless of whether a U.S. court has the power to impose monetary contempt sanctions on a foreign state — a question that this Court need not decide — basic principles of equity and comity preclude such an order in this case.

1.    *Equitable Principles Weigh Decisively Against An Order Imposing*
*Monetary Contempt Sanctions On The DRC For Its Failure To Comply With The*
*District Court's Discovery Order.*  At least absent exceptional circumstances, a
court "should not issue an unenforceable" order against a foreign state.  *In re*
*Estate of Marcos Human Rights Litig.*, 94 F.3d 539, 545, 548 (9th Cir. 1996).  In
exercising its equitable authority, a court should consider whether its orders will
be effective and should utilize the least amount of compulsion necessary to
achieve the desired end.  *See, e.g., Hicks on Behalf of Feiock v. Feiock*, 485 U.S.
624, 637 n.8 (1988); *Shillitani v. United States*, 384 U.S. 364, 371 (1966); *see also*
*Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 550 (1937) ("[A] court of
equity may refuse to give any relief when it is apparent that that which it can give
will not be effective or of benefit to the plaintiff.").  Even assuming arguendo that
a court has the authority to enter an order imposing monetary sanctions, where, as
here, a monetary contempt sanction is unenforceable under 28 U.S.C. §§ 1609-
1611, a district court should not (at least absent exceptional circumstances) enter
such an order.

The plaintiff argued in district court that monetary contempt sanctions
should be imposed even if they were unenforceable, because such sanctions were
the sole means available to compel the DRC to provide discovery in aid of

execution of the judgment. The plaintiff contended that, without the potential penalty of monetary contempt sanctions, the DRC would be free to flout discovery orders with impunity and the district court's order authorizing execution against (unidentified) DRC property would be meaningless.

The United States Government does not condone a foreign state's failure to comply with a valid order of a U.S. court. However, the plaintiff is incorrect to assert that the only meaningful way to ensure foreign state compliance with district court orders is through an award of monetary contempt sanctions. In seeking to enforce a judgment of liability, the district court may order execution or attachment of foreign state property identified by the plaintiff that comes within the scope of § 1610(a). The district court may also order targeted discovery to confirm that an identified asset is subject to attachment or execution. And of course, the foreign state may voluntarily pay the claim, or the United States Government may engage in diplomatic efforts on a plaintiff's behalf to encourage the foreign state to pay.

Whether or not an award of monetary contempt sanctions would be of *any* utility to a plaintiff in a particular case, its utility would generally be quite limited, given the unenforceability of such an order in U.S. courts and the fact that other countries do not recognize as valid orders imposing monetary penalties on a

foreign state for failure to comply with a court order, *see infra* pp. 20-24; *see also*

J. Dellapenna, *Suing Foreign Governments and Their Corporations* 742 (2d ed.

2003) (recognizing that "there may be no way to enforce" monetary contempt

sanctions against a foreign state given the "severe restrictions on executing

judgments").

Weighed against the minimal utility to a plaintiff of an order imposing

monetary contempt sanctions is the likelihood that such an order will be viewed by

the foreign state as a suggestion of purposeful wrongdoing, and an offense to the

dignity of the foreign State. *Cf. In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir.

1998) (noting that contempt order against high-level Greek officials "offends

diplomatic niceties even if it is ultimately set aside on appeal"). In determining

the proper response to a foreign state's failure to comply with a district court order

compelling discovery, it is important to recognize the strongly held view of many

foreign states that they are not subject to coercive orders by a U.S. court. Absent

specific evidence to the contrary, the refusal of a sovereign state to conform to a

judicial directive should not be considered as an expression of scorn or contempt

for which such sanctions are normally imposed. Rather, such a refusal may reflect

a determination by that foreign state that a U.S. court lacks power to control its

conduct. Although there is widespread acceptance in modern international law

that foreign states' immunity from adjudication may be restricted, "immunity from enforcement jurisdiction remains largely absolute," and "a foreign State continues largely immune from forcible measures of execution against its person or property." H. Fox, "International Law and the Restraints on the Exercise of Jurisdiction by National Courts of States," in M. Evans, ed., *International Law* 364, 366, 371 (2003); *see also id.* at 371 ("Nor may an injunction or order for specific performance be directed by a national court against a foreign State on pain of penalty if not obeyed.").

The conclusion that equitable considerations foreclose the order imposing monetary contempt sanctions in this case is buttressed by the statutory prohibition on awarding punitive damages against a foreign state in 28 U.S.C. § 1606. The district court ordered the DRC to pay enormous monetary fines — now totaling more than $1 million, and continuing to accrue at a rate of $80,000 per week — and to pay them directly to the plaintiff. This stark illustration of the accepted principle that contempt sanctions may serve to "punish a prior offense as well as coerce an offender's future obedience," *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994), cannot be squared with § 1606's categorical ban on punitive damages against a foreign state.

The plaintiff relied in the district court on cases in which U.S. courts have ordered monetary contempt sanctions against a foreign state agency or instrumentality, or have suggested in dictum that sanctions might be available against a foreign state, but none of those cases considered the enforceability of such sanctions or whether they were justified under traditional equitable principles. *See, e.g., First City, N.A. v. Rafidain Bank*, 281 F.3d 48, 52-55 (2d Cir.) (affirming sanctions order for failure to comply with post-judgment discovery order, but addressing only question whether court had authority to order discovery), *cert. denied*, 537 U.S. 813 (2002); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477-1478 (9th Cir.) (upholding monetary contempt sanctions for failure to comply with post-judgment discovery order, but limiting analysis to whether FSIA permitted requirement of supersedeas bond or letter of credit pending appeal), *cert. dismissed*, 506 U.S. 948 (1992); *cf. Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 79-80 (3d Cir. 1994) (vacating injunctive order against foreign state but suggesting in *dictum* that court could impose monetary sanctions for contumacious conduct). The plaintiff also relied on the Seventh Circuit's decision in *Autotech Technologies LP v. Integral Research & Dev. Corp.*, 499 F.3d 737 (7th Cir. 2007), *cert. denied*, 552 U.S. 1231 (2008), but the only issue before that court was whether a separate jurisdictional

basis was required before the district court could adjudicate whether a foreign

state instrumentality was in contempt, and the court did not consider the propriety

of an order imposing monetary sanctions on a foreign state or its instrumentality.

*Id.* at 744-745.  This Court should follow the only court of appeals squarely to face

the issue, *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428 (5th Cir. 2006),

and rule that the district court erred in ordering monetary contempt sanctions

against the DRC.

      2.     *International Practice Also Weighs Against An Order Of Monetary Contempt Sanctions Against A Foreign State.*  International practice also supports

the conclusion that a district court should not order coercive monetary contempt

sanctions against a foreign state, at least in the absence of exceptional

circumstances not present here.  In enacting the FSIA, Congress "was primarily

codifying pre-existing international and federal common law."  *Stephens v.
National Distillers & Chem. Corp.*, 69 F.3d 1226, 1234 (2d Cir. 1995).  As State

Department Acting Legal Adviser Charles N. Brower testified before Congress,

the statute was "drafted keeping in mind what we believe to be the general state of

the law internationally, so that we conform fairly closely, we believe, to our

accepted international standards."  *Immunities of Foreign States, Hearing on H.R.
3493*, Before Subcommittee on Claims and Governmental Relations of House

Judiciary Committee, 93d Cong., 1st Sess. 18 (June 7, 1973).  It is thus appropriate to consider foreign and international legal norms of foreign sovereign immunity in applying the FSIA and adjudicating cases arising under it, both in light of the history of that statute and also because of the possible ramifications for the United States for its reciprocal treatment by courts abroad if U.S. courts diverge from international practice.  *See, e.g., Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1295 (11th Cir. 1999).

The European Convention on State Immunity bars a court from imposing monetary sanctions on a foreign state that is a party to judicial proceedings in another party state for "its failure or refusal to disclose any documents or other evidence."  European Convention on State Immunity, Article 18 (E.T.S. No. 074) (Convention entered into force June 11, 1976).  Under the Convention, a court faced with a foreign state's noncompliance is limited to remedies involving "whatever discretion [the court] may have under its own law to draw the appropriate conclusions from a State's failure or refusal to comply."  European Convention, Explanatory Report, Article 18-Point 70.  And because the European Convention does not provide for any mechanism to enforce a judgment against a foreign state, *a fortiori* courts lack power under the Convention to enter coercive sanctions for non-compliance with their judgments.

Similarly, the United Nations Convention on Jurisdictional Immunities of States and Their Property provides that "[a]ny failure or refusal by a State to comply with an order of a court of another State enjoining it to perform or refrain from performing a specific act * * * shall entail no consequence other than those which may result from such conduct in relation to the merits of the case. In particular, no fine or penalty shall be imposed on the State by reason of such failure or refusal." United Nations Convention on Jurisdictional Immunities of States and Their Properties, Article 24(1). The United Nations Convention is not yet in force, and the United States is not a signatory to the Convention. Nevertheless, it is the position of the United States that a number of the Convention's provisions, including Article 24(1), reflect current international norms and practices regarding foreign state immunity.

Notably, the principle reflected in Article 24 of the Convention was uniformly supported by member states, which disagreed only about whether to extend even further a state's immunity from coercion. In the initial 1986 formulation of the draft Articles, the International Law Commission proposed two provisions barring courts from imposing coercive measures on foreign states, one of which recognized a state's immunity "from any [judicial] measure of coercion requiring it to perform or to refrain from performing a specific act on pain of

suffering a monetary penalty." Yearbook of the International Law Commission, 1986, Vol. II, Part Two, pp. 12, UN Doc. A/41/10, chap. II.D. Some states considered that formulation too narrow, with Mexico complaining that coercive measures "do not consist solely in monetary penalties," and the United Kingdom protesting that the Articles should recognize state "immunity from the very possibility of having such an order made against it." *International Law Commission: Jurisdictional Immunities of States and Their Property, Comments and Observations Received from Governments*, UN Doc. A/CN.4/410, at 33 (Feb. 17, 1988). As the United Kingdom elaborated, it is not "appropriate for a domestic court to order the Government of another State, without its consent, to do or not to do particular acts whether or not any penalty is threatened," and "[i]n any event, there is in general no method of enforcing such a penalty against a foreign State * * *." *Id.*, UN Doc. A/CN.4/410, at 58; *see also id.* at 24 (comments of German Democratic Republic) ("[I]t is not permissible as a matter of principle to exercise judicial compulsion against another State.").

Finally, a number of other nations that have codified foreign sovereign immunity law have prohibited monetary sanctions against a foreign state for its failure to comply with an injunctive order. Canadian law, for example, provides that "[n]o penalty or fine may be imposed by a court against a foreign state" for its

failure to produce documents or other information to the court, and further provides that a state shall be immune *in toto* from any "injunction, specific performance or the recovery of land or other property."  Canadian State Immunity Act, §§ 12(1), 10(1).  The United Kingdom State Immunity Act similarly provides that a foreign state may not be penalized with monetary sanctions for its failure to disclose or produce any document or other information in court proceedings, and also may not be subject to any "injunction or order for specific performance," absent narrow circumstances not present here.  UK State Immunity Act, § 13, http://www.opsi.gov.uk/RevisedStatutes/Acts/ukpga/1978/cukpga_19780033_en_ 1.  Singapore and Pakistan have also enacted immunity provisions essentially identical to those of Canada and the United Kingdom.  *See* Singapore State Immunity Act, § 15 (available at http://statutes.agc.gov.sg/non_version/cgi-bin/ cgi_retrieve.pl?&actno=Reved-313&date=latest&method=part); Pakistan State Immunity Ordinance, § 14.  And under Australian law, "[a] penalty by way of fine or committal shall not be imposed in relation to a failure by a foreign State or by a person on behalf of a foreign State to comply with an order made against the foreign State by a court."  Australian Foreign States Immunities Act of 1985, § 34 (available at http://www.comlaw.gov.au/comlaw%5Cmanagement.nsf/ lookupindexpagesbyid/IP200401424?OpenDocument).

Thus, international practice does not allow monetary contempt sanctions of the type ordered by the district court, providing further support for the conclusion that such sanctions should not have been ordered here.

3.  *The Domestic Treatment Of The United States Government Provides Analogous Support For The View That Monetary Contempt Sanctions Should Not Be Ordered.*  The analogous context of courts' treatment of the United States Government also supports the view that monetary contempt sanctions should not be imposed on a foreign state.  The United States Government is immune from the jurisdiction of U.S. courts except to the extent that its immunity has been abrogated by Congress.  Numerous courts have recognized that, even where Congress has waived the United States's immunity to suit, the Government may not be ordered to pay monetary sanctions for violation of a court order absent an explicit waiver of sovereign immunity for such sanctions.  *See, e.g., Yancheng Baolong Biochemical Prods. Co. v. United States*, 406 F.3d 1377, 1382-1383 (Fed. Cir. 2005); *Coleman v. Espy*, 986 F.2d 1184, 1190-1192 (8th Cir.), *cert. denied*, 510 U.S. 913 (1993); *see also In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1070 (D.C. Cir. 1998) (holding that sovereign immunity would prevent a litigant from seeking monetary damages or attorneys' fees and costs from contumacious federal official).  The basic premise of foreign sovereign immunity

is that other nations are the juridical equals of the United States. *See, e.g., The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 137 (1812) (noting theory of "perfect equality and absolute independence of sovereigns"). These decisions regarding the treatment of the United States Government properly inform a U.S. court's consideration of the propriety of entering monetary sanctions against foreign States.

4. *The Nature Of The Overbroad Discovery And Execution Orders In This Case Also Weigh Against Monetary Contempt Sanctions.* Finally, in addition to the considerations and equitable circumstances discussed above that are implicated generally when a district court orders money contempt sanctions against a foreign state, the specific circumstances of this litigation weigh heavily against the imposition of sanctions. Specifically, both the underlying execution order of the district court and its subsequent order of discovery in aid of execution were improperly overbroad.

The execution order sought to be enforced by the plaintiff purports to authorize execution of the underlying judgment "against any property, interests, or assets of any kind permitted by the [FSIA]," without identification of specific property subject to execution (except for two real properties subsequently held to be immune from execution under the FSIA). Dkt. 29, at 1-2. But "[t]he FSIA did

not purport to authorize execution against a foreign state's property * * * wherever that property is located around the world." *Autotech*, 499 F.3d at 750.  Property of a foreign state is subject to execution only if it is in the United States" and "used for a commercial activity" in this country, 28 U.S.C. § 1610(a), and is not subject to the additional protections conferred by of § 1611.  The determination whether those requirements are satisfied, moreover, must be made by a district court rather than a judgment creditor or a marshal.  *See Connecticut Bank*, 309 F.3d at 250 (recognizing that, under §§ 1609, 1610(a), and 1610(c), "only a court may enter an order of attachment or execution against a foreign state's property" and may do so only after ascertaining that an exception to immunity under § 1610(a) or (b) applies to the property).  Given these statutory limitations on execution and the potential irritation to a foreign state that an overbroad execution order may cause, a plaintiff must "identify specific property upon which it is trying to act" before the district court authorizes execution.  *Autotech*, 499 F.3d at 750.  The district court erred in failing to require this showing.

In addition, the district court's discovery order requiring the DRC to provide information about its worldwide assets, without regard to whether those assets were subject to execution under the FSIA, was also overbroad.  In setting out in § 1610(a) the narrow circumstances in which "attachment in aid of

27

execution" against foreign state property would be permitted, Congress also intended to include any "attachments, garnishments, *and supplemental proceedings available under applicable Federal or State law to obtain satisfaction of a judgment,*" including post-judgment discovery in aid of execution under Federal Rule of Civil Procedure 69(a)(2). H.R. Rep. No. 94-1487, at 28. Thus, although post-judgment discovery is permitted under § 1610(a), that discovery is subject to the same limitations that apply to other coercive measures under the statute. *See Autotech*, 499 F.3d at 744-745 (holding that requirements set out in §§ 1609 and 1610 "delimit the scope of the district court's power to enter orders executing a judgment" and restrict the scope of the "court's remedial and enforcement powers").

Overbroad discovery orders of the type issued by the district court have the potential to harm the United States' foreign relations. "No aspect of the extension of the American legal system beyond the territorial frontier of the United States has given rise to so much friction as the requests for documents in investigation and litigation in the United States." Restatement (Third) of Foreign Relations Law of United States, § 442, Reporters' Notes 1, at 354 (1987). As this Court recognized in somewhat analogous circumstances in *In re Papandreou,* 139 F.3d at 253, "a district court authorizing discovery to determine whether immunity bars

jurisdiction must proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure." Here, the plaintiffs should have been required to meet an initial burden to identify arguably non-immune foreign state property within the jurisdiction of the district court, before the district court ordered limited discovery to confirm the status of that property. *See, e.g., EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir.), *cert. denied*, 522 U.S. 818 (2007); *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1096 (9th Cir. 2007).

The FSIA modified "in part" the prior legal regime under which foreign state property was absolutely immune from execution, "even in ordinary commercial litigation where commercial assets are available for the satisfaction of a judgment." H.R. Rep. 94-1487, at 8. The original exceptions to immunity of foreign state property in § 1610 involved property in the United States (1) for which the foreign state had waived immunity from execution; or (2) that was related to the claims giving rise to the district court's jurisdiction over the foreign state. *See* Pub. L. No. 94-583, 90 Stat. 2891, 2896 (1976), codified in relevant part at 28 U.S.C. § 1601(a)(1)-(a)(5). Congress thus envisioned that enforcement efforts in U.S. courts, including post-judgment discovery, generally would relate to property already identified at the time of suit — and in many instances, property

that was the very basis for the claim against the foreign state. As Congressman M. Caldwell Butler suggested at a hearing on an earlier version of the bill, and Acting Legal Adviser Charles Brower agreed, this meant in practice that a U.S. litigant typically would need to "find commercial assets [of a foreign state] related to his activity before he can proceed with litigation" and enforce a resulting judgment. *Immunities of Foreign States, Hearing on H.R. 3493*, Before Subcommittee on Claims and Governmental Relations of House Judiciary Committee, 93d Cong., 1st Sess. 23.

There is no indication in the text or history of the FSIA that Congress intended to authorize litigants to invoke the statute as a means of harnessing the power of U.S. courts to obtain discovery from foreign states regarding international assets not subject to execution under the statute, but located in countries in which no similar discovery mechanism is available. Particularly where the judgment creditor has made no threshold showing regarding the existence of foreign state property in the United States subject to execution under §§ 1609-1611, and the discovery order seeks information about the foreign state's assets worldwide, a foreign state's refusal to comply with that order should not be the basis for an award of monetary contempt sanctions.

## CONCLUSION

For the foregoing reasons, this Court should vacate the order of the district court imposing monetary contempt sanctions on the Democratic Republic of Congo.

Respectfully submitted,

HAROLD HONGJU KOH
  Legal Adviser
  Department of State
  Washington, DC  20520

TONY WEST
  Assistant Attorney General
RONALD C. MACHEN JR.
  United States Attorney

DOUGLAS N. LETTER
  (202) 514-3602
/s/ Sharon Swingle
SHARON SWINGLE
  (202) 353-2689
  Attorneys, Appellate Staff
  Civil Division, Room 7250
  Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington, D.C.  20530-0001

OCTOBER 2010

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,599 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared with Word Perfect 12 in a proportional typeface with 14 characters per inch in Times New Roman.

/s/ Sharon Swingle
Sharon Swingle
Counsel for the United States

## CERTIFICATE OF SERVICE

I hereby certify that two copies of the foregoing Brief Of The United States

As *Amicus Curiae* In Support Of Defendant-Appellant were served on the

following counsel by electronic mail and by regular mail, on October 7, 2010:

Bradford A. Berenson
Eric A. Shumsky
James W. Coleman
Sidley Austin LLP
1501 K Street NW
Washington, DC  20005

Jeremy Martin
Simpson Martin, LLP
1349 Empire Central Drive
Woodview Tower, Suite 600
Dallas, TX  75247-4042

Stephen F. Malouf
Jonathan Nockels
Law Offices of Stephen Malouf
3811 Turtle Creek Boulevard
Suite 1600
Dallas, TX  75219

/s/ Sharon Swingle
Sharon Swingle
Counsel for the United States